SO ORDERED: October 19, 2017.



**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| REHEA DAWN HARLAN | ) | CASE NO. 16-7769-RLM-13 |
| | ) | |
|    Debtor | ) | |
| _____ | ) | |
| | ) | |
| REHEA DAWN HARLAN | ) | |
| | ) | |
|    Plaintiff | ) | Adversary Proceeding |
| | ) | No. 16-50317 |
|    Vs. | ) | |
| | ) | |
| NEBRASKA ALLIANCE REALTY | ) | |
| COMPANY, MARION COUNTY | ) | |
| TREASURER, MARION COUNTY | ) | |
| AUDITOR, ERIE INSURANCE | ) | |
| | ) | |
|    Defendants | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

This case involves a matter of first impression regarding a chapter 13 debtor's rights in the tax surplus fund provided for in Ind. Code §6-1.1-24-7. It is before the Court on the Motion for Summary Judgment filed by the plaintiff, Rehea Dawn Harlan (the "debtor") and a Motion for Judgment on the Pleadings filed by defendants Marion County Treasurer and Marion County Auditor (collectively, "the County"). The County's motion seeks to dispose of this adversary proceeding upon the underlying substantive merits, and refers to matters outside the pleadings. Therefore, the court will treat the County's motion as a motion for summary judgment. See, Fed. R. Civ. P. 12(d), applicable here under Fed. R. Bankr. P. 7012(b); *In re Nay*, 563 B.R. 535, 537 (Bankr. S. D Ind. 2017) (applicable standard for motion for judgment on the pleadings is summary judgment standard). For the reasons stated below, the Plaintiff's motion for summary judgment is denied and the County's motion for judgment on the pleadings, treated as a motion for summary judgment, is granted.

## Facts

The facts are undisputed. The debtor, Rehea Harlan, inherited property located at 5878 N. Victoria Drive, Indianapolis, (the "Property") and fell behind in payment of her property taxes. The Property was offered at tax sale and Nebraska Alliance Realty Company ("Nebraska") purchased the tax certificate for $47,000, of which $3525.40 paid delinquent taxes and $450 paid the costs associated with the tax sale. The county holds the remainder of the proceeds ($43,024.60) (the "Tax Surplus") in the tax sale surplus fund. The last day for the debtor to redeem the Property was October 11, 2016. The redemption period had not expired and the debtor had not redeemed the Property when she filed her chapter 13 case on October 7, 2016.

The debtor maintains that she has a present right to use the Tax Surplus. Her current chapter 13 plan proposes that she pay $465.00 a month for 60 months for a plan base of $70,924.60, which includes the Tax Surplus in that plan base. The plan also provides that the Tax Surplus be turned over to the chapter 13

2

trustee and that Nebraska's secured claim be paid through the trustee conduit upon court order. The claims bar date has passed and only the debtor's bankruptcy attorney and Nebraska have filed claims. Nebraska's proof of claim is for $49,741.65 which is the full amount it paid for the tax certificate at tax sale ($47,000) and pre-petition accrued interest.

## Discussion

### Summary Judgment Standard

A party is entitled to summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of proving the absence of a genuine issue of material fact and the non-moving party must affirmatively demonstrate the existence of a genuine issue of material fact requiring trial. *Celotex Corp. v. Cantrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Clark*, 550 B.R. 429, 431 (Bankr. N. D. Ind. 2016).

### The Indiana Tax Sale Statute

Under Indiana law, the purchaser at a tax sale purchases a tax certificate of sale which constitutes a lien against the property. Ind. Code §6-1.1-24-9(b)(West 2013)(herein after, "I.C."), *Star Financial Bank v. Shelton,* 691 N.E.2d 1338, 1340 (Ind. Ct. App. 1998), *trans den.*, 706 N.E.2d 167 (Ind. 1998). The sale does not give the purchaser title to the property because the certificate of sale is subject to the owner's right of redemption. I.C. §6-1.1-24-6.3(c); *Jenner v. Bloomington Cellular Services, Inc.*, 77 N.E.3d 1232, 1237 (Ind Ct. App. 2017). Rather, the tax certificate gives the purchaser the right to petition the state court for a tax deed to the property in the event the property is not redeemed within one year from the date of the sale of the tax certificate. *Id.* The debtor held title in the Property as of the petition date and none of the parties dispute that the Property is property of the estate, subject to Nebraska's lien. The issue is the nature of the Debtor's interest in the tax surplus.

3

The debtor argues that the Tax Surplus is property of the estate because it is a proceed of the Property under §541(a)(6). The bankruptcy code does not define "proceeds" but its definition is intended to be broad and includes anything of value generated by property of the estate. *In re Nageleisen*, 527 B.R. 258, 264 (Bankr. E. D. Ky. 2015). Here, the Tax Surplus is what Nebraska was willing to pay for the Property over and beyond the minimum bid.[1] Only one Indiana court has stated that tax surplus funds are proceeds of property of the bankruptcy estate, however, it was in an entirely different context than the present case. *In re Brewer*, 743 N.E.2d 322, 324 (Ind Ct. App. 2001). *Brewer* started as a chapter 13 bankruptcy but was converted to a chapter 7 bankruptcy. In *Brewer*, the bankruptcy trustee abandoned the subject property and the tax surplus along with it, so that the mortgagee could resume foreclosure. The issue was whether the mortgagee/ judgment holder was entitled to the surplus funds in proceedings supplemental to execution when the property was not redeemed by the Debtor. There was no discussion as to the nature of the debtors' legal interest in the funds and the Court's analysis focused on the judgment holder's right to seek payment of its unpaid judgment through proceedings supplemental against the surplus funds when the property was not redeemed. The *Brewer* case is not relevant to the issue presented in the present case.

## Property of the Estate

"Property of the estate" consists of all legal or equitable interests of the debtor in property, wherever located and by whomever held, as of the commencement of the case. §541(a)(1). Given this broad definition, federal bankruptcy law initially casts a wide net and captures a large amount of property it identifies as "property of the estate". That wide scope is narrowed, however, by state law which determines the nature and the extent of the debtor's interest in

---

[1] The minimum bid that will be accepted at tax sale is set forth in I.C. §6-1.1-24-5(f) and includes the amount of delinquent taxes and special assessments, including those that are due in the year of the sale, as well as penalties, costs of sale and other reasonable expenses of collection

4

that property. *Butner v. United States*, 440 U.S. 48,54, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law"); *In re Marrs-Winn Co., Inc.*, 103 F.3d. 584, 590 (7th Cir. 1996); *In re Ellis*, No. 10-16998-AJM-7A, 2011 WL 5147551 at *2 (Bankr. S. D Ind. October 27, 2011). Despite the broad definition of "property of the estate" under §541(a), a debtor's rights may not be enlarged beyond those existing at the commencement of the case. *In re Beattie*, 150 B .R. 699, 701 (Bankr. S. D .Ill. 1993).

## Debtor's Standing to Compel Turnover under §542

The debtor's complaint seeks turnover of the Tax Surplus under §542. Section 542(a) provides that an entity that holds property that a trustee may sell under §363 or that a debtor may exempt under §522 shall turn that property over to the trustee. Section 1303 gives the chapter 13 debtor, exclusive of the trustee, the rights and powers that a trustee has under §363(b) to use, sell or lease property of the estate. Courts have reasoned that, to the extent a chapter 13 debtor has the right under §363 to use property of the estate, a debtor has authority under §542 to seek its turnover. *In re Seigfried,* No. 14-12381, 2014 WL 7240071 at *4 (Bankr. D. N. M. December 19, 2014) (chapter 13 debtors have exclusive right to use and control estate property and seek turnover.); *In re Hutchinson*, 354 B.R. 523, 532 (Bankr. D. Kan. 2006); *In re Coleman*, 229 B.R. 428, 429 (Bankr. N. D. Ill. 1999).

A debtor's right to seek turnover under §542 springs from the debtor's present right to use the property under §363, and thus a debtor must have the right to possess and use the property sought to be turned over under §542 as of the commencement of the case to be successful in a turnover action. *In re Philadelphia Entertainment and Development Partners, L.P.*, 549 B.R. 103, 144 (Bankr. E.D. Pa. 2016) ("[i]f a debtor does not possess a present and undisputed right to possess or use the property as of the commencement of the bankruptcy case, §542(a) relief may not be used to acquire such rights.").

5

Likewise, it should be noted that Section §542 relief may not be used to adjudicate a debtor's underlying rights in the property where ownership of the property is in dispute. *Id.*; *In re Johnson*, 215 B.R. 381, 386 (Bankr. N. D. Ill. 1997 (turnover under §542 "is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.").

Nebraska raises the affirmative defense that the debtor lacks standing to bring this action for turnover of the surplus. The debtor contends that as of the commencement of the case, she held a present right to use and possess the Tax Surplus itself. Adjudication of the debtor's present right in the Tax Surplus is the very nature of this dispute and thus, the debtor cannot seek turnover under §542. What the Debtor actually seeks is a determination of the extent of her interest in the Tax Surplus. If determined in her favor, one would expect a motion for turnover would be forthcoming.

Debtor brought this action by way of an adversary proceeding, which is the proper procedural vehicle to determine the rights of the parties in the tax surplus, and Debtor has named all parties having an interest in the property. Therefore, the court will disregard the title of the Complaint and determine that this matter is properly before the court by way of this adversary proceeding as a complaint to determine Debtor's interest in the property. See, Fed. R. Bankr. P. 7001(2). The debtor has standing to bring this action. See, *In re Hammond*, 420 B.R. 633, 636 (Bankr. W. D. Pa. 2009) (chapter 13 debtor has standing to address claims against her interest in property that is her residence.) To the extent Nebraska's affirmative defense asserts that the debtor does not have standing to bring an action to determine the extent of her interest in the Tax Surplus under Fed. R. Bankr. P. 7001(2), it is not well taken.

6

Tax Surplus Fund under Ind Code §6-1.1-24-7

Indiana has both an administrative and a judicial method by which entities with an interest in property subject to tax sale may assert a claim against the tax surplus fund. The administrative method under I.C. §6-1.1-24-7(c) is reserved for two classes of claimants: property owners (I.C.§6-1.1-24-7(c)(1)) and purchasers at tax sale (I.C.§6-1.1-24-7(c)(2)). These entities may file a verified claim with the county and, if the county treasurer and county auditor approve the claim, the county auditor issues a warrant to the claimant for the amount due. The judicial method under I.C. §6-1.1-24-7(d) allows all other entities with an interest in the property to file a claim with the court in the county in which the property is located. The county auditor issues a warrant to the claimant only as directed by the court. I.C. §6-1.1-24-7(d).

The debtor contends that she has a present right to the full amount of the Tax Surplus because the administrative remedy under I.C. §6-1.1-24-7(c)(1) was amended in 2016 wherein it no longer conditions a property owner's right in the fund on the failure to redeem and subsequent divestiture of the property.

As of October 11, 2015, the date of the tax sale, I.C. §6-1.1-24-7(c)(1) provided that the "owner of record of the real property at the time the tax deed is issued who is *divested of ownership by the issuance of the tax deed*" (emphasis added) may file a verified claim for money which is deposited in the tax sale surplus fund. Under this version of the statute, two conditions had to be met in order to make a claim in the fund: (1) the entity making the claim had to be the entity that was the property owner of record at the time the tax deed was issued and (2) the property owner had to have failed to redeem the property and had to have been divested of it. By using property ownership *as of the time the tax deed is issued* as the relevant benchmark, the statute left room for "bounty hunters" to take advantage of unsophisticated property owners unaware of their right to assert a claim in the surplus fund.

### 2010 and 2016 Amendments

To counter this unfair practice, I.C. §6-1.1.-24-7.5 was added in 2010 to provide that such bounty hunter agreements were not enforceable unless they were in writing, signed by the property owner, and clearly set out the amount in the fund and the property owner's share. The fee charged to locate the surplus funds was capped at 10% of the amount collected from the fund. Further "teeth" were added to this statute in 2016 by giving the attorney general and the attorney general homeowner protection unit power to enforce this provision and recover restitution and costs. I.C. §6-1.1-24-7.5(c). As further proof that the Indiana legislature wanted to crack down on bounty hunters, I.C. §6-1.1-25-2 (a)(2) was amended to include that the amount required for a redemption by a bounty hunter *included* the amount in the tax surplus fund, which is not the case for the property owner.

The practice by bounty hunters of getting the property owner to convey the property to them before the expiration of the redemption period was curbed by the 2016 amendment to I.C. §6-1.1-24-7(c)(1), the amendment that the debtor now claims gives her a present right in the Tax Surplus. That amendment changed the benchmark for eligibility to make a claim to the fund under the administrative remedy and now provides that "owner of record of the real property *at the time the real property was certified for sale* under this chapter and before the issuance of a tax deed" may file a verified claim. The amendment deleted reference to "who is divested of ownership by the issuance of the tax deed". Moving the benchmark back to the time the property was certified for sale ensured that the owner, and not the bounty hunter to whom the property is conveyed after tax sale but before the redemption period expires, may use the administrative means to assert a claim against the fund. The bounty hunter still has available to it the more cumbersome judicial method to make a claim against the funds under I.C. §6-1.1-24-7(d). The 2016 amendment became effective on July 1, 2016, after the date of the tax sale of Debtor's property but before the petition date. P.L. 187, SEC.7, eff. July 1, 2016.

The debtor argues that the 2016 amendment controls because it was in effect as of the petition date. The tax sale statute sets out various time frames in which certain acts must be taken with respect to the property to be sold at tax sale, and those time frames are calculated from the date of the tax sale. [2] As of the petition date, the debtor retained her right of redemption under I.C. §6-1.1-25-4 and the version of statute in effect as of the petition date provided that the redemption period was one year from the date of sale. The one-year countdown began immediately after the tax sale. It was at that point that the statutory scheme to redeem the property or to claim the surplus and surrender the property was established. The statute in effect immediately after the tax sale was the 2015 version of the statute which called for divestiture of the property and it is that version that controls. See, *Marion County Auditor v. Sawmill Creek, LLC.*, 964 N.E.2d 213 (Ind. 2012) (where court reversed setting aside of tax deed, applying tax notice statute in effect at the time tax sale notices were given, not amended statute that provided for follow-up requirements when initial attempt at notice is returned). In the absence of the bankruptcy filing, the debtor's remedies would have been under the 2015 statute. The filing of the bankruptcy did not enlarge Debtor's property rights. Nothing in the 2016 amendment suggests that it retroactively applies to tax sales held before July 1, 2016. Debtor's right to use and possession of the surplus funds is contingent upon the Debtor choosing not to redeem the property and to take the surplus funds instead. Debtor's Chapter 13 Plan is premised upon the Debtor retaining title to the property and paying the secured

---

[2] For example, the court in the county in which the property is located shall conduct a hearing not later than 7 days before the advertised *date of the tax sale* and shall enter a judgment for taxes, special assessments, penalties and costs due no later than 3 days before advertised *date of the tax sale.* I.C. §6-1.1-24-4.7. The final published notice of the particulars of the tax sale must be published not less than 30 days before *the sale date.* I.C. §6-1.1-24-6.1(a)(3). The amount of money needed to redeem includes 110% or 115% of the minimum bid, depending on whether the property is redeemed 6 months or 1 year *after the date of sale*. I.C. §6-1.1-25-2. The redemption period is 1 year (or 120 days for a purchasing agent qualified under Ind. Code §36-7-17) after *the date of sale*. I.C. §6-1.1-25-4.

9

claim of the Tax Sale purchaser. Therefore, Debtor does not have a present right to the use and possession of the surplus funds.

Even if the 2016 amendment did apply, the result would not change. It is clear that the motivating factor behind the 2010 and 2016 amendments to I.C. §6-1.1-24-7(c) was to deter bounty hunters from preying upon unsuspecting property owners; it was not to alter the longstanding practice that divestiture is a condition precedent to an owner's right to the tax surplus fund. I.C. §6-1.1-24-7(c)(1) includes an "and" between "owner of record of the real property at the time the real property was certified or sale under this chapter" and "before the issuance of a tax deed". Both criteria must be met for the property owner to make a claim under this subsection and it contemplates that a tax deed at some point will be issued. A tax deed is issued only when the owner does not redeem and thus, is divested of the property. While not expressly stated, it is implicit in I.C. §6-1.1-24-7(c)(1) that divestiture is still required to claim the funds.

Debtor's interpretation of the 2016 amendment also ignores the plain language of the statute. I.C. §6-1.1-24-7(c)(2) provides that a tax sale purchaser may file a claim against the fund "upon redemption of the tract or item of real property". I.C. §6-1.1-24-7(c)(1) and §6-1.1-24-7(c)(2) are separated by the word "or" which connotes "one or the other, but not both". If subsection (c)(1) indeed allowed the property owner to claim the funds and use them to redeem the property, a redemption would occur. If a redemption occurs, the tax sale purchaser would be entitled to file a claim against the funds under (c)(2). The statute does not allow both the property owner in (c)(1) and the tax sale purchaser in (c)(2) to have a claim to the funds at the same time. The statute is constructed such that either the property owner has a claim if the property is not redeemed OR the tax sale purchaser has a claim if the property is redeemed. There exists no option for both a redemption and an owner's right to claim the funds. As with the 2015 version of the statute, the 2016 amendment requires divestiture for the debtor to claim the Tax Surplus.

10

### Restriction on Transfer under §541(c)(1)

The debtor further contends that 2015 version of I.C. §6-1.1-24-7(c) which does not allow an owner access to the funds until a divestiture occurs is an impermissible restriction on the transfer of the debtor's interest in the funds under §541(c)(1). Brief, ECF #22, p. 11. ("Defendants' cited state statutes do not determine ownership of the tax sale surplus funds, they merely restrict the transfer the delivery (sic) of those funds".) Section 541(c)(1)(A) provides that an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2) or (a)(5) of §541 notwithstanding applicable non-bankruptcy law that restricts or conditions the transfer of such interest by the debtor. This section invalidates restrictions on the transfer of property of the debtor so that all of the interests of the debtor in property will become property of the estate. *In re Farmers Market, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986); *In re Thorpe Insulation Co.*, 671 F.3d 1011, 1026 (anti-assignment clause in pre-petition agreement was unenforceable under §541(c)(1)); *In re Pipkins*, No. 13-30087DM, 2014 WL 2756552 at *5 (Bankr. N. D. Cal. June 16, 2014) ("protection from creditors" provision in annuity policy was unenforceable under §541(c)(1)).

Nothing in I.C. §6-1.1-24-7 restricts the transfer of the Tax Surplus to the debtor. Rather, the statute merely requires the debtor to fulfill a condition precedent before she can claim them. Had that condition been fulfilled as of the petition date, the debtor would have been entitled to the Tax Surplus and nothing in I.C. §6-1.1-24-7 would have restricted transfer of it to her bankruptcy estate, provided she followed the procedure for making a claim. The debtor has no present right to use the Tax Surplus because the condition precedent giving her a right to it has not occurred, not because the Indiana statute restricts its transfer. Her interest in the Tax Surplus is still subject to that condition precedent because all of the "[r]ights and claims of a debtor that on the petition date that are subject to future conditions or unperformed obligations of the debtor are held by the estate subject to those same conditions and obligations." *In re Powell*, 511 B.R. 107, 113 (Bankr. C.

D. Ill. 2014) (determining that a debtor's interest in profit sharing payments that was contingent on the debtor's continued employment though the end of the year was a contingent interest included in property of the estate).

### The *Lamont* Case

The debtor next argues that the bankruptcy code overrides the procedure set out in I.C. §6-1.1-24-7(c), and that she has a present right to use the Tax Surplus based on the holding in the *Lamont* case. [3] The *Lamont* case discussed the effect of a property owner's chapter 13 bankruptcy upon a tax sale purchaser's rights under the Illinois property tax statute. The debtors in *Lamont* filed a chapter 13 case well within the redemption period and after their property had been sold at an Illinois tax sale. Like Indiana, a tax sale purchaser in Illinois does not acquire title to the property at the tax sale. Rather, the purchaser receives a "certificate of purchase" which allows him to petition the circuit court for a tax deed three to six months before the expiration of the redemption period. 740 F.3d at 400-401. The debtors listed the county – and not the tax sale purchaser – in their bankruptcy schedules and their confirmed chapter 13 plan provided for payment of the delinquent taxes (paid by the purchaser at the tax sale) directly to the county. The purchaser filed a petition for tax deed about six months before the expiration of the redemption period, apparently unaware of the debtors' pending chapter 13 case. By that point, the debtors' plan had been confirmed for nearly three years.

The purchaser moved for relief from stay to allow it to petition the circuit court for a tax deed to the property. The purchaser's argument was that the interest it derived under the state statute was not a "claim" treatable under a chapter 13 plan. The Seventh Circuit acknowledged that Illinois law provided the tax sale purchaser with the possibility of ownership of the property if not redeemed and that this remedy was in the nature of "an unusual tax lien". The question was

---

[3] *In re Lamont*, 740 F.3d 397 (7th Cir. 2014).

12

whether that unusual tax lien, a "unique statutory creature", was a "claim". *Id.* at 406. Citing an Illinois Supreme Court case and the broad definition of "claim" under the Bankruptcy Code, the Seventh Circuit Court of Appeals concluded a tax sale purchaser had no direct right to payment from the owner, and thus, did not hold a "claim" against the owner. However, the expansive definition of "claim" under the bankruptcy code includes claims against the debtor's property. Because the nature of the purchaser's interest fell within the broad definition of "claim" under the bankruptcy code, it could be treated in the chapter 13 plan. *Id.* at 408-409. The court emphasized that the plan was treating the purchaser's secured claim, not formally redeeming the property. *Id.* *Lamont* determined that the tax purchaser's interest was indeed in the nature of a "claim" which could be modified in a chapter 13 plan. It did not involve a tax surplus fund and certainly did not hold that the bankruptcy code trumped the Illinois property tax statute.

      The tax sale purchaser's interest is not so amorphous under Indiana law. I.C. §6-1.1-24-9 provides that the tax sale purchaser acquires a lien on the property for the entire amount paid upon the issuance of a certificate of sale. Given this express provision, bankruptcy courts in this district have had little difficulty in determining that the purchaser's lien is a "claim" that can be modified under §1322(b). *In re Hazel*, No. 15-8273-RLM-13, slip op. at 6 (Bankr. S. D Ind. January 7, 2016); *In re Leonard*, Adv. Pro. 12-59031 2013 WL 2237520 (Bankr. S. D. Ind. January 3, 2013); *In re Pridemore*, No. 12-91863-BHL-13, slip op. at 6 (Bankr. S. D. Ind. January 9, 2013). Nothing *Lamont* or the cases from this district remotely infers that the bankruptcy code preempts the state tax sale statute. *Lamont* was careful to not conflate the parties' rights under the state statute with those under §1322(b). If anything, *Lamont* suggests that the rights under the tax statute and the rights under §1322 are separate and distinct and unfold on their separate, but parallel, tracts. A debtor who does not redeem within the statutory period, extended by 60

13

days by §108(b), loses the right to redeem *under the tax statute* [4] but preserves the right to modify the tax purchaser's secured claim under §1322(b) if the bankruptcy was timely filed. There is no preemption of the state tax statute, however. At most, an intervening bankruptcy under §108(b) may toll or "preempt" the redemption period under the state statute for 60 days and under §108(c) may toll the period in which a purchaser may petition the state court for a tax deed under the state statute, [5] but otherwise, the basic rights and duties of the respective parties under the statute remain unchanged. The debtor's reliance on *Lamont* is misplaced. The bankruptcy code does not override I.C. §6-1.1-24-7.

As of the petition date, the debtor, under the Indiana tax sale statute, had two options: (1) exercise her right of redemption on or before October 11, 2016 and pay the treasurer the amounts set out in I.C. §6-1.1-25-2 [6] or (2) allow the one-year redemption period to expire without redeeming the property, divest herself of the Property, and make a claim against the tax surplus fund under I.C. §6-1.1-24-7(b). Neither of the debtor's available options gave her a present right to or use of the Tax Surplus to redeem the property and the intervening bankruptcy did not change that. The intervening bankruptcy, at most, allowed the debtor to modify the tax purchaser's claim under §1322(b) and spread out payments of that claim under the plan. While the intervening bankruptcy may have altered the time frame in which the debtor had to act, she still possessed only those two options as of the petition

---

[4] See, *Lamont*, 740 F.3d at 410 ("our holding does not toll the redemption period. The redemption period expires when it expires.").

[5] *Lamont*, 740 F.3d at 410 ("All that is tolled is the tax purchaser's time to obtain a tax deed after the redemption period expires, and that is a direct result of the Illinois property tax code.").

[6] That section provides that the total amount of money required for the redemption of real property by an owner is (a) if the redemption occurs more than 6 months after the tax sale, 115% of the minimum bid for which the property was offered at tax sale; (b) the tax surplus fund (c) 5% interest on the tax surplus fund; (d) all taxes and special assessments paid by the purchaser at tax sale and 5% on those amounts; and ( e) certain costs and fees incurred by the purchaser, as long as the purchaser has certified those amounts to the county auditor before the redemption occurs and (f) all delinquent taxes, assessments and penalties that have accrued after the sale. The aggregate of these amounts is then reduced by the amount in the tax sale surplus fund and the resulting amount is the amount the owner must pay to redeem the property.

date. She becomes entitled to the Tax Surplus only if she fails to redeem and subsequently is divested of the Property. That condition has not yet occurred and may never occur. Thus, the debtor holds a contingent interest in the Tax Surplus and it is not subject to turnover at this point. The Tax Surplus shall remain in the possession of the County until further order of this court.

Accordingly, the County's motion for judgment on the pleadings, treated as a summary judgment, is GRANTED and the Plaintiff's motion for summary judgment is DENIED. [7]

#        #        #

---

[7] The Court feels compelled to offer guidance going forward. Section §1322(b)(2) allows a secured claim to be paid in installments over the life of the plan. The Indiana tax sale statute contemplates payment of the redemption price only by means of a one-time lump sum payment. The court in *Lamont* addressed this predicament and suggested that the trustee retain the payments until the entire redemption amount was paid and then disburse it to the tax sale purchaser. 740 F.3d at 410. The court believes this to be a practical solution and it obviates the need for Nebraska to have to disgorge the installments paid to it under the plan if the case converts or dismisses before the full redemption amount as provided for in I.C. §6-1.1-25-2 is paid. The plan may provide that, upon full payment of the redemption amount, the stay may be lifted for Nebraska to file a claim for the Tax Surplus under I.C. §6-1.1-24-7.